**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

SALA-COLON ET AL.,

Plaintiffs,

v.

RIVERA-FERNANDEZ ET AL.,

Defendants.

CIVIL NO.: 25-1098 (ADC)

## REPORT AND RECOMMENDATION

### I. INTRODUCTION

Pending before the Court is co-defendants Pariter Wealth Management Group LLC ("Pariter Wealth"), Pariter Risk Management Inc. ("Pariter Risk"), Pariter Advisors LLC ("Pariter Advisors") and Pariter Securities LLC's ("PS", collectively the "Pariter Defendants") motion to dismiss. ECF No. 58. On July 24, 2025, Plaintiffs José Sala-Colón and Melanie Rosselló-Wirshing (collectively "Plaintiffs") filed an amended complaint (the "complaint"). ECF No. 50. The complaint alleges the Pariter Defendants are liable for federal securities fraud under 15 U.S.C. §78(j)(b) and 7 C.F.R. 240.10b-5, violations of the Puerto Rico Uniform Securities Act ("PRUSA") under 10 L.P.R.A. § 851, et seq and 10 L.P.R.A. § 890, violations of the Banking Act of Puerto Rico under 7 LPRA Sec. 1 et seq., 111(a) and 10 LPRA Sec. 1 et seq, breach of contract under 31 L.P.R.A. § 3024, and common law fraud. *Id.* The motion to dismiss alleges, *inter alia*, that the allegations do not state a claim on which relief can be granted, that the claims are time barred, that the complaint is an impermissible group pleading that fails to give notice to the Pariter Defendants and that the complaint fails to join indispensable parties. Plaintiffs then filed an omnibus opposition responding to this motion to dismiss as well as that of the other Co-

Defendants. ECF No. 64. The Pariter Defendants filed a reply and in turn Plaintiffs filed a surreply. ECF Nos. 82, 85. For the reasons addressed below it is recommended that the Pariter Defendants' motion to dismiss be GRANTED.

## II. Summary of Allegations of the Complaint

Plaintiffs are a married couple who, in 2009 while planning for retirement, chose to invest their savings with the Pariter Defendants.[1] ECF No. 50 at 2-3. Plaintiffs chose to invest with the Pariter Defendants due to three representations made to them. *Id.* at 12. These were that the Pariter Defendants would act as a fiduciary, that the Pariter Defendants' compensation would be fee based and that no commissions would apply. *Id.* In beginning this relationship Plaintiffs were asked to sign "extensive" paperwork, prepared by the Pariter Defendants' bank office. *Id.* at 13. "Much of this paperwork was left blank." *Id.*

At the outset of this relationship in 2009, the Pariter Defendants persuaded Plaintiffs to invest in a whole life insurance policy ("the policy") *Id.* Plaintiffs bought the policy for two million dollars ($2,000,000). *Id.* at 9. The Pariter Defendants assured the Plaintiffs that after purchasing this insurance policy no additional premium payments would need to be made and that the policy would guarantee a death benefit of seven million dollars ($7,000,000) by the year 2040. *Id.*

Despite the promises from the Pariter Defendants, Plaintiffs had to make two additional payments of two hundred and sixty thousand dollars ($260,000) each to keep the policy active, one in 2011, the next in 2012. *Id.* at 13. Co-defendant Javier Fernando Reyes-Colón (Mr. Reyes"), then an employee of one of the Pariter companies, sent an email to the Plaintiffs on March 11, 2013, indicating that these were the last two payments that would need to be made. *Id.*

---

[1] The complaint does not indicate which of the four entities named Pariter they actually invested their savings with. In the end, it is inconsequential for purposes of the analysis at hand and the conclusions of this report whether Plaintiffs invested in one or more of the Pariter Defendants.

In 2013, the Plaintiffs noticed that their portfolio had suffered losses, including a five-hundred-and-forty-six-thousand-dollar ($546,000) loss from what the Pariter Defendants referred to as a "high/low instrument". *Id.* at 15. When questioned, the Pariter Defendants told the Plaintiffs that their other investments had increased exponentially. *Id.* They also indicated that "'Romark', a private equity alternative instrument", was expected to go public and would generate a tenfold return for plaintiffs. *Id.*

By 2014, the Pariter Defendants had allocated 85-90% of Plaintiffs' investment assets between the policy and illiquid, high-risk investments. *Id.* at 14. The Pariter Defendants induced the Plaintiffs to add more capital to their portfolio by taking a loan. *Id.* Pariter Defendants' employees and co-defendants themselves Francisco Rivera-Fernández and Mr. Reyes assured the Plaintiffs that "interest rates are so low that with almost any investment, we can make a profit through arbitrage (the spread)." *Id.* Relying on these assurances of a high return, the Plaintiffs signed a promissory note ("the note") for two million dollars ($2,000,000). This additional capital was also placed in highly illiquid and risky investments. *Id.* at 15.

Throughout the Plaintiffs' relationship with the Pariter Defendants, these entities shared a business address and interchangeably managed, traded and administered Plaintiffs' investments. *Id.* At various times Plaintiffs received statements listing different entities among the Pariter Defendants as in charge of their accounts. *Id.*

In mid-to late 2017, Mr. Reyes left the Pariter Defendants to work for Co-Defendant Select Wealth Advisors LLC ("Select Wealth"). *Id.* Plaintiffs followed Mr. Reyes to Select Wealth by transferring their portfolio there. *Id.* Plaintiffs' relationship with the Pariter Defendants ended in 2017 when they transferred their accounts to Select Wealth. Therefore, while the complaint's

alleged facts continue with respect to other defendants, any actions that occurred after 2017 do not implicate the Pariter Defendants.

## III. LEGAL STANDARD

In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "a plausible entitlement to relief." *Rodríguez-Ortiz v. Margo Caribe, Inc.*, 490 F.3d 92, 95 (1st Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007)). "Plausible, of course, means something more than merely possible, and gauging a pleaded situation's plausibility is a 'context-specific' job that compels us 'to draw on' our 'judicial experience and common sense.'" *Schatz v. Republican State Leadership Committee*, 669 F.3d 50, 55 (1st Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

Such a task requires a two-pronged analysis. "First, the court must sift through the averments in the complaint, separating conclusory legal allegations (which may be disregarded) from allegations of fact (which must be credited)." *Rodríguez-Reyes v. Molina-Rodríguez*, 711 F.3d 49, 53 (1st Cir. 2013). "Similarly, a court does not accept as true allegations that while not stating ultimate legal conclusions, are nevertheless so threadbare or speculative that they fail to cross the line between the conclusory and the factual." *Air Sunshine, Inc. v. Carl*, 663 F.3d 27, 33 (1st Cir. 2011) (internal quotations omitted). In short, "to avoid dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *Torres v. Bella Vista Hosp., Inc.*, 523 F. Supp. 2d 123, 133 (D.P.R. 2007) (quoting *Twombly*, 550 U.S. at 555, 570).

"Second, the court must consider whether the winnowed residue of factual allegations gives rise to a plausible claim of relief." *Air Sunshine, Inc.*, 663 F.3d at 33. In making this determination under Rule 12(b)(6), the court must limit its focus to the allegations of the complaint and "accept

as true 'all well-pleaded factual averments and indulg[e] all reasonable inferences in the plaintiff's favor.'" *Doyle v. Hasbro, Inc.*, 103 F.3d 186, 190 (1st Cir. 1996) (quoting *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996)). In addition to the complaint, the court can consider "(a) 'implications from documents' attached to or fairly 'incorporated into the complaint,' (b) 'facts' susceptible to 'judicial notice,' and (c) 'concessions' in plaintiff's 'response to the motion to dismiss.'" *Schatz*, 669 F.3d at 55 (quoting *Arturet-Vélez v. R.J. Reynolds Tobacco Co.*, 429 F.3d 10, 13 n.2 (1st Cir. 2005)). "We appropriately draw on our 'judicial experience and common sense' in evaluating a complaint, but we may not disregard factual allegations 'even if it strikes a savvy judge that actual proof of those facts is improbable.'" *Manning v. Boston Medical Center Corp.*, 725 F.3d 34, 43 (1st Cir. 2013). Although all inferences must be made in plaintiff's favor, the court need not accept "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like." *Aulson*, 83 F.3d at 3. Dismissal under Rule 12(b)(6) is appropriate only if the facts alleged, taken as true, do not warrant recovery. *Id*.

## IV. DISCUSSION

### A. IMPERMISSIBLE GROUP PLEADING

Before considering the Pariter Defendants' arguments regarding specific causes of action, it is necessary to consider their argument that the complaint constitutes an impermissible group pleading. *See* ECF No. 58 at 10-13. Specifically, the Pariter Defendants argue that the complaint fails to put each corporate entity on notice of the allegations against them. In response, Plaintiffs argue that the complaint properly alleges that the various Pariter Defendants acted as a single enterprise. ECF No. 64 at 13.

Federal Rule of Civil Procedure 8 requires, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief" Fed. R. Civ. P. 8. "[A] complaint must allege

a plausible claim as to each defendant sued." *Sánchez v. Pereira-Castillo*, 590 F.3d 31, 48 (1st Cir. 2009). "At the motion to dismiss stage a complaint generally will only be dismissed where it is 'entirely implausible' or impossible for the grouped defendants to have acted as alleged." *Colón v. P.R. Convention Ctr. Dist. Auth.*, 2023 U.S. Dist. LEXIS 140845 at *17 (internal citations and quotations omitted).

The complaint alleges that the four Pariter Defendants acted as a single entity. In essence therefore the complaint alleges that all four Pariter Defendants are responsible under each of the causes of action the Plaintiffs brings. To support this position Plaintiffs allege in the complaint that,

> Pariter Wealth, Pariter Securities, Pariter Risk and Pariter Advisors all behaved as a single enterprise throughout their relationship with Plaintiffs. All of these supposedly "distinct" corporations are based in a single office in Guaynabo, PR. At this same location, Mr. Rivera and Mr. Reyes sold to Plaintiffs all sorts of securities and financial instruments, including Whole Life Insurance referenced to in this Complaint. Moreover, and as further evidence of the foregoing, during the period of 2010-2017, Plaintiffs indistinctly received monthly statements from all of these entities showing that Pariter Wealth, Pariter Risk, and Pariter Securities interchangeably were managing, trading and administering Plaintiffs' positions, as such these corporate entities conducted themselves as a single enterprise.

ECF No. 50 at 15. The complaint goes on to describe eight account statements that span between September 2010 and January of 2022. Each of these statements indicates that Pariter Wealth, Pariter Risk or Pariter Securities oversaw the account. However, the exact entity changes from statement to statement. These allegations that the Pariter Defendants did not behave as separate entities state a plausible claim that each of them is responsible for each of the alleged wrongful acts. *See Arist Med. Scis. Univ. v. Triple-S Propiedad, Inc.*, 2021 U.S. Dist. LEXIS 92713 at 21 (May 13, 2021) (finding that when a reasonable inference can be made from the complaint that defendant-corporations disregarded corporate structures between them, the complaint successfully states a claim against both defendant-corporations, despite referring to their actions

only collectively). This is not to say that Plaintiffs are entitled to pierce the corporate veil at this stage. The questions of whether veil-piercing is warranted is for later in the proceedings. *See id.*

### B. Statute of Limitations

The Pariter Defendants argue that Plaintiffs' claims are time barred. To consider whether the claims are time barred, it is important to clarify some dates. The Pariter Defendants and the Plaintiffs signed an investment advisor contract on December 14, 2009. ECF No. 50 at 23. A fair reading of the complaint reveals that the policy was bought the same year. *Id.* at 13. The Plaintiffs ended their relationship with the Pariter Defendants in 2017. *Id.* at 15. They filed their claim before the Financial Industry Regulatory Authority ("FINRA") arbitration panel on December 29, 2023.[2] *Id.* at 22. That claim was dismissed by the arbitral panel on November 4, 2024. *Id.* at 24. Then, on February 14, 2025 the original complaint in the present case was filed. ECF No. 1.

The Pariter Defendants first argue that the statute of limitations has elapsed with respect to Plaintiffs' federal claims. Federal law makes it unlawful

> [t]o use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, or any securities-based swap agreement[,] any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. §78(j)(b). This cause of action, however, is subject to a statute of limitations. That statute provides that "a private right of action that involves a claim of fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning the securities laws…. [m]ay be brought not later than the earlier of — (1) 2 years after the discovery of the facts constituting

[2] The Plaintiffs only filed an arbitration claim against two of the Pariter entities among the Pariter Defendants, that is, Pariter Wealth and Pariter Securities. Hence, any equitable tolling due to Plaintiffs pursuit of their claims in the FINRA forum would only be applicable to the two entities that were parties to the FINRA arbitration. However, this fact is insignificant. As explained below, equitable tolling makes no difference to whether Plaintiffs' claims are time barred.

the violation; or (2) 5 years after such violation" 28 USCS § 1658(b)(1)-(2). The two-year limit is a statute of limitations; however, the five year maximum limit is considered a statute of repose and not a statute of limitations. *McCann v. Hy-Vee, Inc.*, 663 F.3d 926, 932 (7th Cir. 2011). Statutes of repose are not subject to equitable tolling in the way that statutes of limitations are. *Id.* Because of this fact, the Plaintiffs' alleged failure to discover the misrepresentations of Pariter Defendants does not extend the five-year period. A statute of repose begins to run at the time the last alleged misrepresentation is made. *Winters v. Stemberg*, 529 F. Supp. 2d 237, 246 (D. Mass. 2008). Given that the Plaintiffs admit that their relationship with the Pariter Defendants ended in 2017, the last misrepresentation would have occurred at the latest in that year. Therefore, the latest that an action under 15 U.S.C. §78(j)(b) could have been brought is the year 2022, significantly before the original complaint was filed in February 2025. Hence, Plaintiffs' claims of security fraud under federal law should be dismissed as untimely.

The Pariter Defendants argue that Plaintiffs' claims under Puerto Rico law are likewise time barred. The Pariter Defendants allege the applicable statute of limitations for all state law claims is the two-year statute of limitation implemented by the PRUSA. They invoke the Supreme Court of Puerto Rico's decision in *PaineWebber v. First Boston, Inc.*, 136 P.R. 541 (1994). Plaintiffs, in turn, contend that not every case involving securities is a case under the PRUSA and that the specific allegations of their case do not invoke the PRUSA. Instead, they argue that the breach of contract statute of limitations of fifteen years ought to apply. Plaintiffs additionally contend that caselaw has restricted the reach of the PRUSA's statute of limitations "exclusively to disputes among industry participants or insiders, not to claims brought by customers against industry participants." ECF No. 64 at 20.

This disagreement calls for additional analysis, beginning with *PaineWebber*. In that case, PaineWebber Inc. bought a security known as a "Ginnie Mae" from First Boston Inc. *PaineWebber, Inc. v. First Boston, Inc.*, 136 D.P.R. 541 (1994).[3] About two and a half years later, PaineWebber Inc. attempted to sell the security, only then learning it was not tax-exempt as they had thought at the time of purchase. *Id.* They sued First Boston Inc. alleging breach of contract for selling them a taxable security rather than the agreed non-taxable security, requesting both recission of the sale and compensation for damages. *Id.* Despite the cause of action not directly arising under the PRUSA, the Puerto Rico Supreme Court held that the action was subject to PRUSA's two-year statute of limitations. *Id.* at 547. They concluded that, should another statute of limitations be applicable to cases of securities transactions, PRUSA's statute of limitations (and with it the intent of the legislators who passed the act) would be rendered ineffective, as a party could simply sue for, as an example, breach of contract if their securities fraud claim had expired. *Id.* Hence, following *PaineWebber* in isolation, it would appear that PRUSA's statute of limitation applies to all related Puerto Rico causes of action arising from the sale of securities. Plaintiffs argue, however, that *PaineWebber*'s holding has since been overturned by three cases.

In the first of these cases the Supreme Court of Puerto Rico found a circumstance in which the sale of securities did not invoke PRUSA or its statute of limitations. *Olivella Zalduondo v. Seguros de Servicios de Salud y otros*, 187 D.P.R. 625, 646 (2013).[4] "[I]n 1999, the shareholders of Triple S created the Triple S Management (Management) corporation and voted for the acquisition and redemption of their respective shares by the new corporation. In this way, Management became the parent company of Triple S 'in exchange for the payment of the shares to the shareholders of Triple S.'" *Id.* at 629-30. Each share was intended to be redeemed for

[3] Certified translation at ECF No. 58-2.
[4] Certified translation at ECF No. 74-2.

$250,000, but the plaintiff alleged that his father, the holder of six shares of Triple S stock, had never redeemed the stock. The Defendants relied on *PaineWebber* to argue that PRUSA's statute of limitations applied and that, since the plaintiff had sued over two years after the events giving rise to the claim, the claims were time barred. Analyzing the purpose of PRUSA, the Supreme Court determined that this dispute was not within the goals of the statute to "regulate[] a specific type of business relationship", that is the "commercial relationships between investors and entities engaged in the securities business, or between several entities of this nature". *Id.* They further explained that while it is not necessary that fraud be specifically alleged for PRUSA to apply "it is necessary that it be a dispute centered on a securities transaction that includes investors or, at least, entities whose main activity is the securities business." *Id.* In so holding, the Supreme Court found that PRUSA is narrow in scope.

> The effectiveness of this statute is limited by the provisions of the law itself. In what concerns the civil liability that allows the filing of a private cause of action, the Uniform Securities Act expressly establishes the necessary elements to be able to bring a legal suit. Article 410 of the statute even limits the causes of civil action subject to its provisions to those arising from violations of section 201(a) – that the person who sold the security is not properly registered; Article 301 – that the value purchased or sold is not duly registered; section 405(b)—making unlawful representations concerning registrations or exemptions; or to section 410(a)(2) itself – offering or selling a security fraudulently. If the cause of action does not fall on any of the [sic] of these elements, is not subject to the statute of limitations set forth in Section 410(e)

*Id.* at 646-47.

*Olivella Zalduondo*, holds that at least one party needs to be primarily in the securities business for PRUSA to apply. *Id.* at 647. Furthermore, it suggests that even when an industry insider is present in the case, there are fact patterns that PRUSA will not apply to. This last point is explored further by Plaintiffs' other cited cases.

In the second case, the Supreme Court of Puerto Rico found that the remedies provided by PRUSA were not the only remedies available to investors buying securities. *Méndez Moll v. AXA*

*Equitable Life Ins. Co.*, 202 D.P.R. 630, 637 (2019).[5] The plaintiff in this case alleged two causes of action. The first, that his broker made false representations, was under PRUSA and barred by the statute of limitations. *Id.* at 646. However, his other cause of action, that he was induced to buy a financial product not suitable to his expressed purpose, was liberally read as a cause of action for breach of contract. *Id.* The Supreme Court found that "a civil cause of action for Breach of Contract exists in cases where a seller of securities breaches any fiduciary duty, rule or regulation of the entities that regulate the securities industry that it has agreed to observe, such as the OCFI in Puerto Rico." *Id.* 649. This cause of action was in addition to the causes of action available under PRUSA and not subject to PRUSA's statute of limitations. *Id.* at 650.

The final case cited by Plaintiffs, in circumstance distinguishable from the case at the bar, involves securities held as collateral for a loan. *Unión Independiente Auténtica v. Santander Securities*, 214 D.P.R. 601, 608 (2024).[6] When the lender thought the debtor was in breach of their loan agreement, it sold the collateral securities. *Id.* The debtor then sued the lender within the breach of contract statute of limitations period of 15 years, but outside of the 2-year limitations set by PRUSA. *Id.* at 609-10. The Supreme Court of Puerto Rico found that while the suit had to do with securities, the plaintiff's breach of contract action did not invoke PRUSA and therefore the breach of contract cause of action was not subject to the two-year statute of limitations. *Id.* at 632.

After analyzing *PaineWebber* and its progeny, neither of the parties are completely correct. PRUSA does not require an industry insider on each side of litigation; it merely requires that at least one of the parties be in the business of selling securities. Additionally, it is not accurate to say that *PaineWebber* still holds that all of Plaintiffs' state law claims fall under PRUSA's two-year statute of limitations. The legal precedent previously discussed establishes that the inquiry to

---

[5] Certified translation at ECF No. 74-1.
[6] Certified translation at ECF 78-1.

determine if PRUSA's statute of limitations applies is not whether the claim involves securities, but rather if a cause of action involves on of the specific violations proscribed by PRUSA. *See Olivella*, 187 D.P.R. at 646-47.

Here, the complaint alleges that all the Pariter Defendants are engaged in selling securities, which is sufficient at this stage to find that one party is in the securities business. *See* ECF No. 50 at 4-5, 15. Furthermore, the complaint specifically alleges that the Plaintiffs and the Pariter Defendants contracted for the broker to abide by their fiduciary duties. *See Id.* at 34. This is comparable to the situation in *Méndez Moll*, where the plaintiff had signed a contract memorializing the ethical duties of the broker to the client. Therefore, Plaintiffs' breach of contract claim is not subject to the two-year statute of limitations of the PRUSA. Instead, Plaintiffs' breach of contract claim is subject to the fifteen-year statute of limitations provided by the Civil Code. 31 L.P.R.A. § 5294.

Considering the Plaintiffs' statements in the light most favorable to them, the statute of limitations has not expired as to their breach of fiduciary duties contractual claim. Even assuming that the Plaintiffs were on notice of the breach of contract as of the earliest misrepresentation coming to light, in the year 2011, when they unexpectedly had to make additional payments to the policy, they still filed their complaint within the 15-year general statute of limitations.

The story is somewhat different for the claim of common law fraud. It is not necessary to decide whether the common law fraud claim is subject to its own statute of limitations or that of PRUSA, following the logic of *PaineWebber*. This is because a common law fraud claim is subject to a one-year statute of limitation in Puerto Rico. *See In re Fin. Oversight & Mgmt. Bd.*, 578 F.Supp.3d 267, 291 (DPR, 2021). In either case, Plaintiffs' claims of common law fraud are time barred.

Plaintiffs assert that the statute of limitations for fraud has not lapsed since they only discovered the fraud in May of 2023, and then it was equitably tolled while they took their case to arbitration from December of 2023 to November of 2024. This would mean that there was only a 7-month gap between the discovery and arbitration, and then a further 3-month gap until the original complaint was filed in February 2025. In this version of events, the statute of limitations would not have expired as only around 10 months have passed between the discovery and the complaint filed in this Court. However, this narrative is not supported by Plaintiffs' own allegations in the complaint. A statute of limitations begins to run "from the moment the aggrieved person has knowledge of the injury…". *Bado-Santana v. Ford Motor Co*., 283 F. Supp. 2d 520, 526 (D.P.R. 2003). "[A] plaintiff will be deemed to have knowledge of the injury, for purposes of the statute of limitations, when she [] has notice of the injury, plus notice of the person who caused it." *Id.* at 527. The complaint identifies two specific misrepresentations that occurred while Plaintiffs maintained a relationship with the Pariter Defendants. The first of these misrepresentations is that the insurance policy would not require additional payments after the initial one. This misrepresentation, by Plaintiffs' own allegation in the complaint, came to light in 2011, when the first additional payment of two-hundred-sixty-thousand dollars ($260,000) had to be paid into the policy. ECF No. 50 at 13. The second alleged misrepresentation occurred when the plaintiffs were induced to take the two-million-dollar ($2,000,000) loan to inject capital into their accounts. Then, they were told that "interest rates are so low that with almost any investment, we can make a profit through arbitrage (the spread)." *Id.* at 14. This misrepresentation was revealed in 2019, when the loan came due and Plaintiffs' investments had not outpaced the amount owed. *Id,* at 17. All other specific misrepresentations noted in the complaint occurred after 2017, when

the Pariter Defendants and Plaintiffs had broken off their relationship.[7] This means that at the very latest, assuming that the longer PRUSA statute of limitations applies, the Plaintiffs had until 2021 to bring their fraud claims against the Pariter Defendants. However, they did not file their arbitration claim until December of 2023, well after the statute of limitations had expired.[8]

Plaintiffs argue in reply that the actions and misrepresentations of the other institutional defendants in this case (the "Arkadios Defendants") and their agent as of 2017, Mr. Reyes, can be attributed to the Pariter Defendants. *See* ECF No. 64 at 16. This however ignores the fact that a principal can only be held liable for the actions of their agent so long as the agent has some form of authority. Here, Plaintiffs were on notice as of mid to late 2017 that Mr. Reyes was no longer the agent of any of the Pariter Defendants. His actions past that time cannot be attributed to them. The complaint does not make any allegation of collusion or conspiracy between the Pariter Defendants and any other defendants. *See generally Id.* The complaint simply asserts that Mr. Reyes as the Plaintiffs' broker worked for different corporate entities at different times. ECF No. 50 at 15.

### C. Banking Act Violations & Punitive Damages

Plaintiffs also assert a claim for violations of the Puerto Rico Banking Act, 7 LPRA Sec. 1 et seq., 111(a) and/or 10 LPRA Sec. 1 et seq. This claim is not suitable to an analysis of whether

[7] Plaintiffs may argue that an additional misrepresentation occurred when the Pariter Defendants informed them that the company "Romark" was to go public and generate "a tenfold return". However, as described by Plaintiffs in the amended complaint, this representation did not contain a time period in which the company was to go public. A prediction of future events that did not come to pass is not necessarily a misrepresentation. *See TeleRep Cribe, Inc. v. Zambrano*, 266 F. Supp. 2d 284 (D.P.R 2003) (citing *Suna v. Bailey*, 107 F.3d 64, 69 (1st Cir. 1997) (finding that under Federal Rule of Civil Procedure 9(b) "[a] party bringing a fraud claim must also demonstrate that the alleged act of fraud is more than a future prediction that later proved to be erroneous.").

[8] The complaint does not identify any additional statements attributable to the Pariter Defendants (including those made by an agent at the time the statement was made) in which they identify the content of the statement, the date it was said, or the person who said it. Insofar as the complaint alleges such unspecified misrepresentations on the part of Pariter Defendants, those allegations do not meet the heightened pleading standard for fraud required under Federal Rule of Civil Procedure 9(b). "This heightened pleading standard is satisfied by an averment of the who, what, where, and when of the allegedly false or fraudulent representation." *Rodi v. S. New Eng. Sch. of Law*, 389 F.3d 5 (1st Cir. 2004) (internal citations and quotations omitted).

the statute of limitations has elapsed because the provision such claim is based upon does not authorize a private cause of action. The enforcement clause of the Puerto Rico Bank Act only contemplates the enforcement of the substantive provisions via the Office of the Commissioner of Financial Institutions (“OCIF” per its Spanish language acronym). *See* 7 L.P.R.A. § 151. “The Office of the Commissioner of Financial Institutions of Puerto Rico shall be in charge of implementing §§ 1 et seq. of this title and shall exercise all those powers and comply with all those duties conferred or imposed upon it by this or any other law applicable to banks in Puerto Rico.” *Id.* No private cause of action is provided. [9] This finding comports with the precedent of the Supreme Court of Puerto Rico with respect to other substantive provisions of the Banking Act of Puerto Rico. *See Santos de García v. Banco Popular*, 172 D.P.R. 759, 770 (2007).[10]

Finally, Plaintiffs' claim for punitive damages is unwarranted. As discussed, Plaintiffs' allegations indicate they had a relationship with the Pariter Defendants from 2009 to 2017. Punitive damages are authorized under Article 1538 of the Puerto Rico Civil Code of 2020. 31 L.P.R.A. § 10803. However, the 2020 Civil Code is not the one which relates to the claims against the Pariter Defendants. “It is well established that if the events of a case occurred before the implementation of the newest Civil Code, then the Puerto Rico Civil Code of 1930 should be applied instead.” *Díaz-Morales v. Universidad de Puerto Rico*, 2023 WL 3177792, at *2 (D.P.R. 2023) (collecting cases). Here, the 1930 Civil Code controls. The 1930 Civil Code does not provide for the award of punitive damages. *Id.* Therefore, the claim for punitive damages fails.

[9] In their motion to dismiss, the Pariter Defendants argue that Plaintiffs also make a claim under The Financial Intermediaries Act of Puerto Rico (the “FIA”), 7 LPRA Sec. 1071 et seq. They go onto argue that said claim likewise lacks a private cause of action. While the Plaintiffs do not list a cause of action under the FIA in the complaint, they do cite the FIA within their cause of action for violations of the Banking Act of Puerto Rico. Insofar as this is considered an allegation of a separate cause of action, it is likewise impossible. OCIF is also responsible for ensuring compliance with the FIA and no private cause of action is provided. *See* P.R. Laws Ann. tit. 7, § 1082.

[10] Certified Translation at ECF 58-3.

### D. Failure to State a Claim for Breach of Contract

The Pariter Defendants argue that even if the Plaintiffs' breach of contract claim is not time barred, it nevertheless fails to state a claim and therefore must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). The elements of breach of contract under Puerto Rico law are "(1) [the existence of] a valid contract; (2) a breach by one of the parties to the contract; and (3) resulting damages." *McMillan v. Rodríguez-Negrón*, 511 F.Supp.3d 75, 80–81 (D.P.R. 2020) (internal quotations omitted).

Here, Plaintiffs have alleged the existence of "multiple contracts" ECF No. 50 at 34. Additionally, the Plaintiffs specifically note the existence of an "Investment Advisor Contract" that was allegedly signed on December 14, 2009. While they are not specific about which contract contains the relevant fiduciary terms, they do indicate the duties contained in one of the contracts. ECF No. 50 at 34 ("…The Investment Adviser will exercise this authority, at its sole discretion, in accordance with the Client's investment objectives…").

While the complaint does allege the existence of contracts, it does not allege who the parties to the contracts were. Instead, Plaintiffs note that "Defendants and Plaintiffs signed multiple contracts were [sic] fiduciary duties were specifically included therein". ECF No 50 at 34. However, there are multiple defendants in this action, including those not among the Pariter Defendants. Plaintiffs' complaint does not allege that these multiple contracts were signed with any of the Pariter Defendants specifically. Even so, reading the complaint in the light most favorable to Plaintiff, their allegation is that they signed contracts with each defendant and that each contained a requirement for the signatory defendant to meet their fiduciary duties. Treating the allegations in the complaint as true, Plaintiffs do allege the existence of a contract as to each of the Pariter Defendants.

As for the element of breach, Plaintiffs have alleged that the contracts they signed required the Pariter Defendants to be fiduciaries towards the Plaintiffs. *See Id.* at 12. "[I]t is unnecessary for a plaintiff to allege the terms of the alleged contract with precision," but "the Court must be able generally to discern at least what material obligation of the contract the defendant allegedly breached." *Oto Analytics, LLC v. Benworth Capital Partners PR, LLC*, No. 23-1034 (GMM), 2025 U.S. Dist. LEXIS 63583 (D.P.R. Apr. 2, 2025) (quoting *Langan v. United Servs. Auto. Ass'n*, 69 F.Supp.3d 965, 979 (N.D. Cal. 2014)). Here, the obligation is clear. The complaint alleges Pariter Defendants had a contractual requirement to invest Plaintiffs' funds in accordance with their objectives and to place Plaintiffs' interest first. Furthermore, the complaint alleges that the Defendants breached their obligation by offering overly costly and illiquid investment instruments to the Plaintiffs and selling them products containing commissions for their own benefit. *See Id.* at 27.

Finally, the allegations of the complaint successfully connect the breach of the contract to the damages suffered by the Plaintiffs. The complaint alleges that "[w]hat was once a small fortune of approximately $6.75 million—including the original amount plus $850,000 of new money that José and Melanie directly contributed in 2021 and 2022 to pay off the loans—has been reduced to nearly half, or around $3.6 million. This decline is the direct result of the self-serving and unsuitable advice provided by Pariter [Defendants and other defendants]". ECF No. 50 at 8. A reasonable inference from the complaint is that this "unsuitable advice" was part of the breach of the contractual fiduciary duty Plaintiffs complain of. With this final element properly alleged, the Plaintiffs have stated a claim for breach of contract.

### E. Supplemental Jurisdiction

The complaint's jurisdictional language indicates that this Court has subject matter jurisdiction over the controversy based on federal question jurisdiction. *Id.* at 2. This is because the complaint makes a claim for violations of federal securities law under 15 U.S.C. §78(j)(b) and 17 C.F.R. 240.10b-5. When such federal claims are made, the Court has supplemental jurisdiction over the Plaintiffs' related state law claims. 28 U.S.C. § 1367. However, as discussed above, the federal claims are subject to a statute of repose which bars the plaintiffs from recovery. Without federal question jurisdiction, the matter boils down to whether it is still proper to exercise jurisdiction over the remaining state law breach of contract claim.

"The district courts may decline to exercise supplemental jurisdiction over a claim under [28 U.S.C. §1367(a)] if… the district court has dismissed all claims over which it has original jurisdiction…". 28 U.S.C. § 1367. When all federal claims have been dismissed before trial, the court uses its "informed discretion" to determine whether it should continue to exercise supplemental jurisdiction. *Roche v. John Hancock Mutual Life Ins. Co*., 81 F.3d 249, 256-57 (1st Cir. 1996). The Court must "weigh concerns of comity, judicial economy, convenience, and fairness." *Id.* "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine -- judicial economy, convenience, fairness, and comity -- will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).

Here, with only a state law breach of contract claim remaining, the balance of factors points towards declining to exercise jurisdiction over the final cause of action. *See e.g. Cruz-Caraballo v. Rodriguez*, 113 F. Supp. 3d 484, 493 (D.P.R. 2015) ("With no valid federal-law claims against defendants remaining, the Court, having considered these factors, declines to retain supplemental

jurisdiction."). Here, the case is still in the motion to dismiss stage, and discovery has not yet begun. Such early-stage cases are much less prejudiced by dismissal of state law claims under supplemental jurisdiction than cases that are procedurally more advanced. *Cf. Redondo Constr. Corp. v. Izquierdo*, 662 F.3d 42, 50 (1st Cir. 2011) (choosing to exercise of supplemental jurisdiction in a breach of contract claim when extensive discovery and trial preparation had already taken place). Therefore, it is recommended that the Court decline to exercise supplemental jurisdiction under 28 U.S.C. § 1367.

## V. CONCLUSION

For the aforementioned reasons, it is recommended that the Pariter Defendants' motion to dismiss (ECF No. 58) be GRANTED. The federal and state law fraud claims, the claims based on violations of the Puerto Rico Banking Act and the claim for punitive damages, should be DISMISSED WITH PREJUDICE. The breach of contract claim, however, is not time-barred and is properly alleged in the complaint. However, because the Court should not exercise supplemental jurisdiction over the breach of contract claim, it is recommended that said claim be DISMISSED WITHOUT PREJUDICE.

The parties have fourteen (14) days to file any objections to this report and recommendation unless otherwise ordered by the court. Failure to file the same within the specified time waives the right to object to this report and recommendation. Fed. R. Civ. P. 72(b)(2); Fed. R. Civ. P. 6(c)(1)(B); D.P.R. Civ. R. 72(d); *see also* 28 U.S.C. § 636(b)(1); *Henley Drilling Co. v. McGee*, 36 F.3d 143, 150–51 (1st Cir. 1994); *United States v. Valencia*, 792 F.2d 4 (1st Cir. 1986).

IT IS SO RECOMMENDED.

In San Juan, Puerto Rico, this 13th day of March, 2026.

s/Marcos E. López
U.S. Magistrate Judge